# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL CASE NO. 3:10-CV-215-GCM-DCK

| | |
|---|---|
| JOYCE DENISE NIVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 12) and "Defendant's Motion For Judgment On The Pleadings" (Document No. 16). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied; that "Defendant's Motion For Judgment On The Pleadings" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Joyce Denise Nivens ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On January 9, 2006, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.* and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*,

alleging a disability beginning May 26, 2004.[1] (Transcript of the Record of Proceedings ("Tr.") 31). The Commissioner of Social Security ("Commissioner" or "Defendant") denied Plaintiff's application initially on June 20, 2006, and again after reconsideration on August 14, 2006. (Tr. 31). Plaintiff filed a timely written request for a hearing on August 17, 2006. Id.

On June 9, 2008, Plaintiff gave notice that she sought to amend her alleged onset of disability date to July 26, 2006. (Tr. 209). Plaintiff then appeared and testified at a hearing on June 13, 2008, before Administrative Law Judge Todd D. Jacobson ("ALJ"). (Tr. 31, 42-71). On September 22, 2008, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 31-41). Plaintiff filed a request for review of the ALJ's decision on September 26, 2008, which was denied by the Appeals Council on March 6, 2010. (Tr. 1-8). The September 22, 2008 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on May 5, 2010. (Document No. 1). Plaintiff's "Motion For Summary Judgment" (Document No. 12) and "...Brief In Support Of Motion For Summary Judgment" (Document No. 13), were filed September 28, 2010; and "Defendant's Motion For Judgment On The Pleadings" (Document No. 16) and "...Memorandum In Support Of Motion For Judgment On The Pleadings" (Document No. 16-1), were filed December 29, 2010. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is appropriate.

---

[1] The record shows that Plaintiff previously filed an application for disability benefits on February 21, 2002, originally alleging disability onset of December 30, 2000, and later amending the disability onset date to March 2002. (Tr. 12). On May 28, 2004, Administrative Law Judge D. Randall Frye determined that Plaintiff was not under a disability at any time through the date of his decision. (Tr. 21). It is unclear to the undersigned whether this prior ALJ decision was ever appealed.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between May 26, 2004, and the date of his decision.[2] (Tr. 31). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from May 26, 2004, through the date of his decision, September 22, 2008. (Tr. 40-41).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

    (1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;

    (2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

    (3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

    (4)    whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

---

[2] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 40).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since May 26, 2004. (Tr. 33). At the second step, the ALJ found that Plaintiff's fibromyalgia, degenerative disc disease of the lumbar and thoracic spine, right knee impairment, depressive disorder, obsessive compulsive disorder and a personality disorder, were severe impairments. (Tr. 33).[3] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 35).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the following limitations:

> option to sit and/or stand on an occasional basis with occasional stair climbing, balancing, stooping, crouching, kneel and crawl, no ladder climbing and no concentrated exposure to hazards such as moving machinery or unprotected heights. In addition, the claimant is limited to simple, routine and repetitive tasks in a job with no public contact that is performed at a non-production pace.

(Tr. 35). In making his finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other

---

[3] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

evidence." Id. The ALJ also considered Plaintiff's testimony regarding her impairments' severity and resulting functional limitations, but deemed this testimony not credible to the extent it was inconsistent with the residual functional capacity assessment. (Tr. 36).

At the fourth step, the ALJ found that Plaintiff could not perform any of her past relevant work. (Tr. 39). At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 40). Specifically, the vocational expert testified that according to the factors given by the ALJ, occupations claimant could perform included: non-postal mail clerk DOT 209687026; office helper DOT 239567010; and a nut and bolt assembler DOT 929587010. (Tr. 40). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between May 26, 2004, and the date of his decision, September 22, 2008. (Tr. 40-41).

Plaintiff on appeal to this Court assigns error to the ALJ's: (1) assessments of pain and credibility; and (2) consideration of the medical opinions. (Document No. 13). The undersigned will discuss each of these contentions.

## A. ALJ's Assessments of Pain and Credibility

1. Complaints of Pain

In her first assignment of error, Plaintiff argues that the ALJ failed to properly consider her complaints of pain and instead mistakenly denied her case based on an inadequate and/or improper credibility finding. (Document No. 13, p.2). Specifically, Plaintiff contends that the ALJ failed to address the threshold inquiry described in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), concerning her complaints of pain. (Document No. 13, p.12).

6

According to the Fourth Circuit,

> for pain to be found to be disabling, there must be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant. . . .
>
> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

Craig, 76 F.3d at 594-95 (citations omitted). Plaintiff alleges that Defendant skipped the first step in the inquiry, "jumping directly to the second step [] of the inquiry, concluding that her complaints of pain were not credible." (Document No. 13, p.6).

Defendant asserts that the ALJ concluded that Plaintiff did indeed possess medically determinable, and severe impairments. (Document No. 16-1, p.3) (citing Tr. 33-34, 247, 287-290, 376). Furthermore, Defendant argues that in determining the Plaintiff's severe impairments, the ALJ acknowledged the associated complaints of pain. Id. Defendant concludes that the ALJ's assessment satisfies the Craig test. Id.

In further support of his position on this issue, Defendant relies on two cases from this Court. Id. (citing Pittman v. Massanari, 141 F. Supp. 2d 601, 610 (W.D.N.C. 2001); Goodwin v. Halter, 140 F. Supp. 2d 602, 608 (W.D.N.C. 2001) (observing that the lack of an explicit step one finding under Craig does not constitute reversible error where the ALJ cites to substantial evidence in support of his credibility finding)).

The undersigned agrees that the ALJ's assessment of whether Plaintiff possessed any impairments that could cause her pain was adequate, and did not constitute reversible error. The ALJ's decision appears to thoroughly discuss Plaintiff's impairments, and specifically references Plaintiff's allegations of pain in the medical records related to those impairments. (Tr. 33-34). The decision also clearly states that after considering the evidence of record, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. 36).

In addition, the undersigned finds that Defendant's argument regarding the precedents of this Court is persuasive, and squarely supported by an even more recent decision. In <u>Smith v. Astrue</u>, this Court opined that

> Although the ALJ did not expressly state that he found Plaintiff to have met the first prong of the test, the presence of evidence establishing those severe impairments along with the fact that the ALJ then moved on to the second prong of the test, is, as Plaintiff concedes, a clear indication that the ALJ found that Plaintiff could satisfy the first prong of the test articulated in <u>Craig</u>.
>
> Plaintiff objects to the absence of an express finding that the first prong was met. As Defendant points out in his brief, it is well established in this District that the practice of moving directly to the second prong is a sufficient indication of an ALJ's consideration of the first prong of the test.

<u>Smith v. Astrue</u>, 3:09CV488-RLV-DSC, 2010 WL 6428510 at *5-6 (W.D.N.C. July 7, 2010).

Here, the ALJ concluded "[a]fter considering the evidence of record" that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. 36). Based on the foregoing, the undersigned is not persuaded that the ALJ

8

skipped the first step of his inquiry, or that he otherwise erred in his review of Plaintiff's complaints of pain.

   2. Credibility

Next, Plaintiff contends that the ALJ's assessment of credibility at step two of the Craig test was not supported by substantial evidence. (Document No. 13, pp.11-14). Plaintiff asserts that the ALJ's finding regarding her credibility was confusing, inadequate and meaningless boilerplate. Id.

At step two of the Craig test, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595.

> Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, see id.; any objective medical evidence of pain . . . . , see 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it

Id.

Defendant argues that the ALJ explicitly assessed the record evidence of Plaintiff's impairments and applied the relevant factors set forth in the Commissioner's Regulations at 20 C.F.R. §§ 416.929 and 404.1529 in making his credibility assessment. (Document No. 16-1, pp.4-5).

The ALJ noted that he considered the evidence of record and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (Tr. 36). The ALJ acknowledged that Plaintiff "may experience some discomfort," but also specifically

observed that she: (1) is able to move around and use her arms and legs in a satisfactory manner; (2) continues to drive and go to the grocery store; (3) does not use assistive devices; (4) does not indicate problems taking care of her personal needs; and (5) she has a lot of responsibility taking care of her grandchildren. (Tr. 36) (citing Tr. 382). The ALJ opined that "[t]hese activities induce the presumption that the claimant has a greater level of functionality than she admits to." Id.

The ALJ's decision then found that Plaintiff's "own estimation of her incapacitation is not supported by medical or other evidence." (Tr. 37). His review of the objective medical evidence resulted in observations including: (1) an MRI of Plaintiff's hip was normal; (2) her pain was under control following discharge from physical therapy; (3) she demonstrated proper lifting mechanics; (4) she rated her own pain as 1-2 on a scale of 1-10, with 10 being the most severe; and (5) her orthopedist reported after her knee surgery that she was off crutches, and although she had some continued difficulty with her knee, he opined that she would ultimately do well. Id.

The ALJ also specifically noted that Plaintiff's inconsistent reporting on the relief provided by her pain medication adversely affected her credibility. Id. He further noted that Plaintiff concluded her physical therapy after a short time "on the basis that her pain had become manageable." Id. Finally, the ALJ's decision states that his observations at the hearing did not indicate that Plaintiff was fatigued or exhibiting pain behaviors. Id. As a result of all the evidence considered by the ALJ, he concluded that her "application for disability benefits is based more on subjective self-assessment than on objective medical evidence." Id.

The undersigned is satisfied that the ALJ relied on substantial evidence in reaching his credibility determination. Furthermore, although the instant lawsuit involves review of the September 22, 2008 decision of ALJ Todd Jacobson, Plaintiff's criticism of the ALJ's credibility

analysis, at least in part, attributes error to a different ALJ decision, dated May 28, 2004. (Document No. 13, p.12) (quoting Tr. 16, 18). Plaintiff's citation to the prior ALJ decision is inappropriate and confusing, and raises questions about the basis for her arguments.

**B. Medical Opinions**

Plaintiff also challenges the ALJ's consideration of medical opinions in the record and the weight afforded certain opinions. (Document No. 13, p.2). Specifically, Plaintiff contends that the ALJ failed to afford the opinion of Dr. Speight proper weight and improperly rejected Dr. Logan's opinion. (Document No. 13, pp. 2, 18-27).

1. Dr. Speight

Plaintiff asserts that the ALJ failed to afford the opinion evidence of Dr. Neal Speight proper weight, although she concedes that the ALJ's decision actually states that the ALJ gave "considerable weight" to Dr. Speight's opinion. (Document No. 13, pp.18-21). Plaintiff argues that the weight given Dr. Speight's opinion was improper because the ALJ afforded greater weight to a state agency physician's opinion. Id.

In addition to referencing a note by Dr. Speight regarding Plaintiff's medications, the ALJ's decision specifically described the consideration given to Dr. Speight opinion:

> I have also considered the opinion of Dr. Speight, who opined on February 26, 2006, that the claimant had a medical or psychological condition that resulted in functional limitations for work and/or attending training. Dr. Speight diagnosed claimant with fibromyalgia, which caused her pain with lifting and prolonged sitting or standing. Although, Dr. Speight opined that the claimant's impairment was permanent, he also stated that sympathetic trigger point injections improved the claimant's capacity for work or work training/preparation activity (Exhibit 14F/6). I have [given] considerable weight to this opinion.

(Tr. 37, 39) (citing Tr. 333-334).

Plaintiff, however, argues that the ALJ ignored Dr. Speight's opinion that her expected work capacity limitations following treatment were "complete." (Document No. 13, p.20) (citing Tr. 334). The undersigned does not find that the ALJ *ignored* Dr. Speight's opinion that her limitations were complete and/or permanent. Rather, the ALJ gave considerable weight to Dr. Speight's opinion and then determined that Plaintiff did indeed have limitations due to her impairments, but that she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 39-40).

Defendant argues in response that "any perceived conflict between Dr. Speight's indication that trigger points would improve Plaintiff's condition and that she was totally disabled was for the ALJ to resolve." (Document No. 16-1, p.8) (citing Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].")). Defendant also argues that the ultimate decision of whether a claimant is disabled is administrative in nature and reserved for the Commissioner's determination. Id. (citing 20 C.F.R. §§ 404.1527(e) and 416.927(e). The undersigned agrees.

In this instance, the ALJ considered Speight's opinion, as well as the opinion of a state agency physician. (Tr. 39). In fact, although the state agency physician opined that Plaintiff retained the capacity for medium work, the ALJ determined that her limitations were greater than those offered by the state agency physicians, and that she was capable of light work with certain limitations outlined in the RFC. (Tr. 39-40). As a result of considering "the medical evidence of record," and the testimony at the hearing, it appears that the ALJ reached a determination that

12

incorporated the opinions of both Speight and the state agency physicians. Id. The undersigned finds Defendant's arguments persuasive, and does not find error in the weight the ALJ afforded Dr. Speight's opinion.

2. Dr. Logan

Next, Plaintiff assigns error to the ALJ's purported rejection of her treating psychiatrist, Dr. Keith Logan. (Document No. 13, p.21). Plaintiff again alleges that the ALJ improperly afforded less weight to her treating physician than to a state agency reviewer. Id. In short, Plaintiff concludes that the ALJ's "rejection of Dr. Logan's opinion was not supported by substantial evidence." (Document No. 13, p.26).

The ALJ's decision includes the following analysis of Dr. Logan's opinion:

> I acknowledge the opinion of Keith Logan, M.D., the claimant's mental health treatment provider. Dr. Logan completed a Mental Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment on the claimant. Dr. Logan opined that the claimant had a substantial loss of ability to understand, remember and carry out simple instructions, make judgments that commensurate with the functions of unskilled work, respond appropriately to supervision, co-workers and usual work situations and deal with changes in a routine work setting (Exhibit 15F). I have given this opinion less weight because it is poorly supported by Dr. Logan's treatment notes. Furthermore, I note that the claimant has had no inpatient psychiatric hospitalizations. In fact, on December 27, 2007, Dr. Logan noted that the claimant's depressive symptoms had improved. Her mental status evaluation was unremarkable and her judgment and insight were reported as fair (Exhibit 15F).

(Tr. 38-39).

In further consideration of Plaintiff's mental health, the ALJ decision also indicates careful review of evidence from the records of Presbyterian Psychiatric Associates. (Tr. 38, 387-398). In

13

particular, the ALJ noted that Plaintiff's global assessment of functioning ("GAF") was 40 when she was initially evaluated on September 14, 2007, but that by February 6, 2008 it had increased to 50. (Tr. 38). The ALJ opined that Plaintiff's "mental status evaluations on February 6, 2008, March 28, 2008, and May 2, 2008, were essentially normal." Id. The ALJ further opined that "the evidence of record demonstrated that Plaintiff's compliance with mental health treatment had proven beneficial to her overall mental health and well-being." Id. In conclusion, the ALJ found that Plaintiff was not precluded form simple, routine, and repetitive tasks. Id.

Defendant asserts that the ALJ's assignment of weight was supported by substantial evidence. Defendant argues that despite difficulties pointed out by Dr. Logan, by the end of 2007 Plaintiff had improved, had fair judgment and insight, and her mental status examinations remained normal through the conclusion of the record. (Document No. 16-1, p.10) (citing Tr. 401). Defendant essentially argues that the ALJ recognized Plaintiff's symptoms, as reported by Dr. Logan and elsewhere in the record, but still found that her symptoms and impairments did not prevent her from activities of daily living and socializing – and were ultimately not disabling. (Document No. 16-1, p.11).

After careful consideration of the parties' arguments, and review of the record, the undersigned agrees with Defendant that the ALJ's assessment and incorporation of the treating physicians' opinions and state agency findings are supported by substantial evidence. Moreover, the undersigned does not find that Plaintiff has offered sufficient support for her conclusion that the ALJ's decision "applied an incorrect legal standard." (Document No. 16-1, p.27).

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 12) be **DENIED**; "Defendant's Motion For Judgment On The Pleadings" (Document No. 16) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Graham C. Mullen.

**IT IS SO RECOMMENDED**.

Signed: July 29, 2011

David C. Keesler
United States Magistrate Judge